Good afternoon, ladies and gentlemen. This is the appointed time for our rehearing on bank of the case of Silvers v. Sony Pictures. Each side has a total of 30 minutes, and the appellant may proceed. May I proceed? Thank you, Your Honor. Good afternoon. My name is Ron Rauchberg, and I represent Sony Pictures. It is Sony's position here today that the Copyright Act does not make any provision for bare assignments of accrued causes of action, and that therefore the holder of such a purported assignment does not have standing to bring a copyright infringement claim against an alleged infringer. And in support of that position, I'd like to start by talking about the actual words found in the statute and the statutory scheme in which they are found. Section 501 of the Copyright Act, of course, refers only to authorizing holders of exclusive rights in copyright to bring copyright infringement cases. In other words, copyright holders, assinees of interest in copyrights, holders of exclusive rights in copyrights are authorized to sue. But I don't think it has the word only in it, does it? No, I agree. It does not have the word only. And it seems to me that you have to treat the silence as pregnant in order to say this is what the statute says. Well, in this instance, Your Honor, the Second Circuit, for example, in the Eden Toys case, does read Section 501. Yes, the Second Circuit does just what you want in that footnote. It reads the word only into it. But the Fifth Circuit goes the other way in Prather. Well, the Fifth Circuit was decided before 501. What did the statute say at the time of the Prather case? I beg your pardon? What did the statute say at the time of the Fifth Circuit case? Well, at the time of the Fifth Circuit case, there was no equivalent to Section 501. There was no provision about who could sue at all? There was instead the doctrine of indivisibility that the courts ---- What was the provision about filing suit? I don't believe there was an express provision about filing suit. There was none discussed in the Prather case. And the Prather case deals with it in that manner. But what I wanted to say about the necessity of reading the word only into the statute is that what must be recognized is that Congress was dealing expressly with the issue of who would be permitted to sue. It was dealing with the indivisibility doctrine under which there were limitations on who could sue. They had been altered by the courts. But essentially the doctrine had started as being that only a copyright proprietor could sue. And Congress was liberalizing that rule. And when Congress, faced with a situation where only A and B can sue, says, okay, now we're enacting Section 501 and we're allowing C and D to sue as well, only is implicit. They have expanded the statute. That's the way we ordinarily decide under Federal statutes whether assignability assignments will be recognized for purposes of filing suit. I believe it is an often used approach, yes, Your Honor. I think the maxim, the exclusio unius maxim, the expression of one thing excludes others, is used in precisely this context. So you think the general rule with respect to antitrust law and ERISA law and securities law and RICO law and so on is that you look to see who the statute says to sue, and if it's not in there, then you can't have an assignment? No, Your Honor. I don't go that far. But in intellectual property cases, in patent cases, trademark cases and copyright cases, and there are cases, including in the U.S. Supreme Court, right on point in the patent area, they hold that in the patent area, for example, in the Crown Dye and Tool case, that there can't be a bare assignment of a cause of action, and it precedes What I'm having trouble with is, from my point of view, this was all being argued in this very narrow area, but why is that area different from the world in general? Well, what the Supreme Court said in the Crown Dye and Tool case is that a patent is, in essence, a right to exclude, and the right to sue for exclusion is inextricably bound with the right to exclude. And so you can't, said the Court, separate the right to sue from the patent itself. The one exception they recognized, as a footnote, is if the patent is transferred, the owner of the patent may retain the accrued cause of action. They noted that exception. But but for that, they said it was inherent in the concept of a patent that the right to sue is part of the right to exclude and can't be separated. That rule is equally inconsistent with this language, right? But it's nonetheless the rule, the rule that you can transfer the patent and accrued causes of action. The rule that you can patent, that's correct. That rule still preserves the, if you will, the marriage of the cause of action and the property right. But it's inconsistent with the language of the statute. Well, it's consistent. It's not found in 501B. That's correct. But it is found more or less in 201D. 201D is a statute that speaks of transfers of exclusive rights, and it does make provision for the transferee of the exclusive right to obtain the remedies of the copyright owner. And while that language is not less, is not entirely free of ambiguity, it does seem that in 201D it could be read to permit exactly what the cases have always permitted, namely the sale of the copyright or the transfer of the copyright with the accrued causes of action. Counsel, I'm having trouble just getting to where you want to go with expressionis exclusio alterius. We said in Longview Fiber that's not a rule in the sense of a binding doctrine. Rather, it's a description of how English is ordinarily used, but often it isn't. And there's a rule of equal force that's often applied, and that is if Congress knows how to say something and it doesn't say it, that means they didn't decide to do it. The choices in action are so commonly assigned that it seems a little surprising when they're not assignable. And I'm thinking when Congress wants to prohibit assignment, it's done so before with things like the Anti-Assignment Act that was passed to prevent speculators during the Civil War from obtaining assignments cheap of veterans' claims. Your Honor, let me go beyond the expressio unius maxim to the statutory scheme here, which I think very much demonstrates the intent of Congress. Congress included a statute of frauds with respect to transfers of exclusive rights and copyright. They have to be in writing under Section 204. Congress included provision for recording of transfers and copyright, and Congress included provisions for resolving priorities among conflicting transfers of exclusive rights in Section 205 should there be conflicting transfers. And the net of all of that is that the defendant in a copyright infringement claim has a high degree of likelihood of being able to look at the public record in the Copyright Office and ascertain with close to certainty that the person pressing the claim is, in fact, the holder of the exclusive right that the copyright infringer is alleged to have infringed. But, Counsel, the same thing occurs in a plain old ordinary real estate setting. You can go down to the recorder's office and see who owns the property. That doesn't stop a property owner from assigning interests in his property and recording them, does it? That's correct in the real estate area. But here, Your Honor, the Court was focused on who could sue. The Court was focused on protecting defendants. I beg your pardon. The Congress was focused on protecting defendants against the multiplicity of litigation. But what multiplicity is there if an assignee is an assignee? He's the real party in interest who holds the property, right? There's actually risk of multiplicity in at least two different ways that follow if the separation of the cause of action from the property right is permitted. One, the fact that Congress did have a statute of frauds and did have a writing requirement and did have a requirement or, rather, a provision for resolving transfers, prevented one kind of multiplicity of action, namely where somebody could have a false claim of an assignment or somebody could claim that an assignment could be made twice. Congress eliminated those possibilities with the statute of frauds and the priority provision, and that's what I meant before when I was referring to the total congressional scheme as one that protected the defendant in an infringement case against the multiplicity of litigation. The defendant could be sure that the owner of the exclusive right was, in fact, a matter of record in the copyright office and that he was dealing with that person. Once you separate the owner of the right from the owner of the claim, that protection no longer exists. Congress was worried about that. But you admit that can be done where a transferor transfers a copyright to Mr. B and retains the accrued cause of action. Yes, I do. If that can happen there, why can't it happen everywhere? Well, because here Congress addressed the issue and took inactive provisions to prevent it. Where in the statute does it say in 501B that the transferor can retain the cause of action although he is not the owner or beneficial owner? Your Honor, that rule, it does not find its – It's court-created. It's not in 501B. It's court-created. It's court-created from prior to the Copyright Act. And accepted. It's never been explained thoroughly by any court. But it's been accepted. It has been accepted by a number of courts. Well, there is some language. You can find language to support it in 201D. Well, there's also language that talks about him, the beneficial owner, having the exclusive right to institute an action for infringement of that right committed while he or she is the owner of it. So doesn't that read on the situation or not? In other words, if the infringement happens before I have transferred the copyright interest, I have the accrued cause of action. So I at least fit within that part of 501B. That fits literally within 501B because you were the owner of the right at the time. I could retain the accrued cause of action because it accrued to me while I was the owner. That's correct. But in terms of what the statute also then goes on to talk about in addressing this multiplicity of actions, the Congress has also provided that the court may require the joinder and shall permit the intervention of any person having or claiming an interest in the copyright. Why doesn't that address the multiplicity of action? Why is it that Congress is balancing here? Joinder is not the answer here for several reasons. First, joinder will not always be possible. It depends on whether the person who needs to be joined is or is not in the district where the case has been brought. Second, there are practical problems. If Sony is the recipient of a claim for copyright infringement, it may wish to settle that claim without ever going to litigation. Joinder doesn't help in getting cases settled before they ever get to court. I'm going to be on one issue here, but how is this different than an antitrust case? All the horribles that you're talking about, antitrust causes of action, as I understand it, are assignable in some instances. ERISA are assignable in some instances. How are any of the problems that you're discussing any different in the copyright instance than in any of these other statutory instances? I think at bottom, Sony's position is not that the practical problems are different here. It's that there are practical problems. They do occur in many fields, but here Congress perceived the problems of multiplicity of litigation and the issue of protecting defendants against multiple suits and addressed them with a comprehensive scheme that requires transfers to be in writing. It doesn't address transfers of causes of action. Transfers deal with the substance, not with the question of who can bring a lawsuit. Well, if you read it together with 501, Your Honor, that's exactly the nub of my disagreement. 201 talks about who owns an exclusive right, who's an exclusive owner, how you transfer exclusive ownership, and how you determine exclusive owners in the event of conflicting transfers. And 501 says exclusive owners are the people who get to sue. It is a package. I think they have to be read together. And when read together in the aggregate, they show that Congress put together a scheme that did protect defendants against fraud, did protect defendants against multiple transfers, did protect defendants against inadvertent multiple transfers, provided that it was recognized that the copyright, the exclusive right to sue, the right to sue and the right to exclude had to be bundled together. That was the essence of what the scheme was. You mentioned 201D. That statute reads, the ownership of a copyright may be transferred in whole or in part by any means of conveyance. And that doesn't have to do with the five exclusive rights under Section 106 because those five exclusive rights are dealt with in the clause immediately after that. Isn't that an indication that Congress meant to allow the transfer of any incident of the copyright in whole or in part? I don't think so, Your Honor, because the right to sue is referred to as a remedy in 201D and I believe in other places in the statute as well. But certainly in 201 it's referred to as a remedy. And nowhere does Congress speak about the remedy of the right to sue being transferable. So there is, I believe, no indication that Congress ever, not in the legislative history and not in the face of the statute, is there any indication that Congress ever intended to permit a bare transfer. And that gets back, I mean, I believe intellectual property is different from other statutory claims in that it is a species of right that exists only by virtue of statute. It's not an adjustment of the common law, for example. And the cases have recognized in the patent area and the trademark area. That's true. I mean, I'm looking for a reason, but that can't be it. ERISA is, I mean, our case law seems to be under ERISA, for example, that you can't transfer to certain people and not to other people, even though the statute is set up, even though it is only creature of statute and even though the statute says, you know, fiduciaries can sue for certain things and benefit rights holders can sue for other things. For some purposes you can have assignments and for others you can't. So it can't be because this is a statute. So what is it? Well, the – I do think that there is a difference between a copyright which wouldn't exist but for the Copyright Act and something like ERISA where there's a, if you will, a modification of the common law provisions that permit fraud suits and common law suits. Was there antitrust? Well, there were antitrust suits at common law, too. Restraints of trade were attackable at common law. How about RICO? But without getting into an entire rationalization of the entire law of assignments, here in the copyright area I do think that the comprehensive statutory scheme that did expand the right to sue but only in the context of providing certain protections to defendants and that only went as far as it did necessarily does have to be read as saying we Congress went this far and no further. Counsel, let me tell you something that's on my mind that bears on how to construe this so that you can educate me out of it. I'm thinking it's always a mistake to read a statute to provide more for its beneficiaries than it does explicitly because the chances are its beneficiaries got all they could. And in this case, the beneficiaries of the statute are a group with a particularly high degree of political clout. It's hard to believe that if they wanted something, they couldn't get it. If we underconstrue their protection, it's so easy for them to get what they want from Congress to just correct our error. But if we overconstrue it, it probably can't be corrected. And what I'm imagining is somebody whose copyright was infringed and who just doesn't have the money to sue to protect themselves, but if they assign the chosen action to somebody who does have the ability to litigate it, then they can get a remedy. It may be that Congress purposely left that door open and we shouldn't close it. Well, I'd like to say two things about that. One is there's no indication that Congress intended to leave that door open. But in addition, I think it's important to recognize here that I don't believe there's any business or commercial reason to require or permit assignments. And in the example that you gave, copyright owners who do not wish or do not have the means to enforce their copyright claims in the courts can do what copyright owners do now, for example, with ASCAP, where ASCAP is appointed attorney, in fact, by copyright holders. If given songwriter's music is played in a- That's a huge organizational effort in a much smaller group than the people that write scripts. It's kind of a joke that every cab driver in Los Angeles has a script. It illustrates the point that there isn't a problem that requires assignment to get it solved. A copyright owner can appoint anybody who's willing to do it to be their attorney, in fact. But when the case is brought, it would be brought in the name of the copyright owner. There wouldn't be any issues of res judicata. There wouldn't be the problems of multiplicity. I didn't finish giving examples of multiplicity. And here, for example, there was an assignment of those claims that arise out of the script. That leaves the copyright in the movie and the potential that Frank and Bob Productions, which is the Asinour and still holds the copyright in the movie, could sue Sony for an infringement of their copyright in the movie. Moreover- That's true whether or not there's been an assignment, because the publisher can assign certain- There can be a subdivision by your own reading of the statute into the five different areas. You could have five parts of the ownership scattered at least among several parties. One could bring an infringement. That doesn't mean that the others don't have the right to sue. In the event a given infringer infringed more than one of their rights, there could be more than one suit. But at least you'd have the knowledge- Let's posit this, just because I want to see how this relates to the language I read out of 501. That is, if I bring a lawsuit claiming that you infringed my script, but the movie right, which I retain a copyright interest in, but there's also a movie and there may be a record that has some music attached to it, whatever. There are multiple. If I bring a suit against Sony and Sony wants to attack the validity of the copyright in the first instance, then those other holders of parts of the copyright have an interest in that litigation, do they not? Certainly speaking loosely, they do. They may not be bound by it, which is one of the problems that you get. Doesn't that get into another area that Congress specifically dealt with in the Copyright Act? That is, derivative ownership versus the underlying ownership. I mean, the statute actually deals with that very situation that Judge Fischer is positing, doesn't it? I'm not sure which provision you're referring to, Your Honor. Well, what I'm referring to is the definitional provisions of derivative works. He's positing a screenplay that the copyright, the author of the copyright, holds the original interest, and then depending upon what the contractual relationship is with the producer or the director, some rights might be transferred, some might not. I'm thinking of Sturt v. Avon, for example. And the movie will have one set of copyrights as a derivative work, whereas the underlying work might have a different set. So you may not even need to join the movie owner. You may not need to, but it's also the case that in those situations, the business arrangements are what's driving the situation. Exclusive licenses are given for business reasons, and they get accompanied by the right to sue. Here there's no business rationale, and so the possible multiplicity is not limited by whatever business considerations will determine what licenses copyright owners grant and what they don't grant. And in particular, what I mean is here Sony, of course, has continued to attempt to exploit its film stepmom continuously, including after the assignment. And so we have a situation, again, to get to the multiplicity point, where we can be sued if this assignment is upheld by Silvers for acts of copyright infringement prior to the assignment, and then we can be sued by Frank and Bob in addition to for its copyright in the movie. We can be sued by Frank and Bob for infringements of its copyright in the screenplay, because they own that. If Frank and Bob brought the first suit and then brought the second one. If Frank and Bob brought the first suit, then they would be bound by principles of collateral estoppel. Okay. They would be bound by their assignee, by what their assignee. I don't believe so. I don't believe they are. That's not a privity arrangement? I'm sorry? That's not sufficient privity for a race you've got a purpose? I don't believe it is. I think that's a one-way street. I think that if you take somebody that you take under from, if that person is bound, you're bound if you take from that person. But here, where Frank and Bob have carved out one of their rights and given it away, a litigation of that right doesn't bind them as to all of the rights that they kept, I don't believe. And so while Frank and Bob would be bound if they were the plaintiff, they wouldn't be bound if Nancy Silvers is the plaintiff. Well, pardon me. Nancy Silvers is the assignee of all the rights for violation or infringement of the copyright by Sony, past, present and future. Well, the allegation in the pleading is that it's only of accrued copyright causes of action. The allegation in the complaint is that the accrued claims were signed, and that's how the plaintiffs read this assignment. Any claim which Nancy Silvers brings as the assignee cannot be brought by Frank and Bob because they're no longer the owners of that claim. No. Any claim that occurs afterwards can be brought by Frank and Bob. That's correct. Right. So there won't be any multiplicity of claims as to accrued claims and there won't be any multiplicity of claims as to future claims because Nancy Silvers can't sue us to future claims and Bob and Frank can't sue us to past claims. Well, I'd like to just answer that and then try to save a few minutes. I don't think that's correct because there's a multiplicity depending on how often you infringe the copyright. That's true. But that's in your hands. If the transfer were not recognized here and if Frank and Bob were the plaintiff, even if they were suing on behalf of Nancy Silvers and had agreed to give her all the money, if Frank and Bob were the plaintiff and let's say Sony established their copyright was invalid, that would be the end of it. They wouldn't be able to bring suit number two because they'd be bound by the principles of collateral estoppel that their copyright was invalid. Or if Sony established that its production was independent of any taint of having been produced with reference to this copyrighted material, that would be res judicato. Once you permit the separation of the ownership and the claims, you permit and possibly encourage the possibility of numerous assinees all entitled to bring claims for different pieces, none of whom will be bound by the principles of collateral estoppel and none of whom will be limited by the business principles that operate to limit what exclusive rights people in fact gather. So you get multiplicity in that manner and you get multiplicity as a result of the possibility of dishonesty or fraud, which Congress also addressed but only with respect to transfers of exclusive rights. It seems to me that even if you got the interpretation you wanted, you would still face the risk of multiplicity, even aside from the distinction that Judge Baya just drew between past and future. I'm thinking you could have somebody come out of the woodwork at any late date and say Nancy Silver's plagiarized from them and they own it. They're the original author and publisher of this work and you're using it without their permission. The congressional scheme of requiring writings and written transfers and recordings is not perfect and doesn't guarantee against problems of that sort, but it does provide a substantial measure of protection that is undermined if bare assignments are permitted. And if I can save a couple of minutes for rebuttal, Your Honor. Give you two minutes on rebuttal. Thank you. May it please the Court. Good afternoon. I'm Stephen Glazer and I represent Nancy Silver's. I want to accomplish two things in my argument today. First, I want to demonstrate that everything we know about congressional intent, everything we can glean on this issue, all indicators point to the fact that Congress did not intend to change the law when it enacted the 1976 Copyright Act in terms of the assignability of an accrued cause of action. Congress intended to do. And the second thing I want to demonstrate is that Congress did not intend to change  of an accrued cause of action. Do you know what was – was there a provision at the time of the Fifth Circuit case with regard to filing suit and what did it say? I don't know what the statutory provision was that was the equivalent of Section 501B is today. Don't we have to know that to know if they changed it? When I say no, because when I say change the law, I mean change the ruling of both the Prather case – I understand that, but it would be some education that they change their ruling if they change the language in some significant fashion. That's correct. But I think they had to change the language to some degree because – In some relevant fashion. Pardon me? In some relevant fashion. Right. I understand. Right. In fact, Congress intended to allow a copyright owner to transfer ownership of its cause of action to another person if that's what the copyright owner wanted to do. It's perfectly – Also, in the realm of patent law, the Supreme Court has held to the contrary of the rule that you're asking us to adopt for copyright, and yet there are cases in which the Supreme Court cautions us that historically these two areas of intellectual property protection have common roots and should generally be construed the same way. How does that fit with the rule that you would like us to adopt for copyright? I agree that there is a sister relationship between patent and copyright, but not on this issue. On this particular issue, the two areas of law diverge, and they diverge significantly. A patent is not subject to the same divisibility that a copyright is. It is the – Well, yes, but the statute tells you exactly the six respects in which that bundle of rights may be divided. That's correct. And among those six is not a seventh, the right to sue. Right. It says that those are the six exclusive rights in a copyright, and they can be subdivided individually, and Section 201 – Sure. They're subdivided ad infinitum. Right. But you know where to find among the list of exclusive rights that can be divided up or divvied up, the right to sue. The right to sue is not explicitly mentioned in Section 106, but there are other rights afforded to the copyright owner under the entire Copyright Act that are subject to Section 201d2, and I believe Section 201d2 expressly provides the authority for the severability and separate transferability and ownership of a cause of action. Well, it refers to a particular claim, so how do you get beyond that? I'm sorry. I don't understand the question. Well, 201d2 allows for subdivision of exclusive rights and their transfer to the owner of any particular exclusive right is entitled to all of the remedies accorded to the copyright owner. Correct. I mean, there's no particular exclusive right listed among the six that says sue. Right. But the statute says including. And I think the clearest indicator – Including what? It says including any subdivision of any of the rights specified in Section 106. And if we turn to the – What that is to suggest is that you can have several people, each of whom has the right to make a different kind of movie based on a book or something like that, but why does it suggest in the face of 501b, which grants the right to institute an action for infringement only to the legal or beneficial owner of an exclusive right under a copyright, how do you get around 501b, which appears to limit the right to institute an action to someone who's the legal or beneficial owner of an exclusive copyright while that person is the owner of that piece of the copyright? Right. Section 501b defines in whom the cause of action accrues. Let me, if you'll permit me to read from – Well, wait a minute. It's more than accrues. It's who can institute an action. Counsel, I'm thinking that that phrase, while he or she is the owner, has independent significance of the who. Instead of being the who phrase, it's a while phrase. And I'm having trouble figuring out why Congress would want to impose this limitation on the owner of a copyright that he can only sue while he's the owner, but not want to prevent people who are not owners at all from suing. No, I believe that Section 501b provides that at the time that there is an infringement, whoever owns the right that's been infringed at that time has the right to sue for infringement of that right, but it doesn't say anything about the inability to transfer that accrued cause of action. Let's assume it's transferred. If it can be transferred, how can a defendant assert defenses like invalidity of the copyright or estoppel or things of that nature? Because any – Just take estoppel. Okay. Let's say the defendant says, Your copyright can't be enforced against me because of some estoppel. Can the defendant say that? Yes. Because an assignee of a cause of action takes no greater rights than the assigneur. Any defense that the defendant has against the assigneur, he can assert against the assignee. And that's the law of assignment. It's in every circumstance that I'm aware of it. And if there is any challenge to the validity of the copyright. How would the defendant – explain how the defendant would assert that against the other plaintiff. You just said the defendant would have the same right that they would have against the assigneur. Yes. The assignee takes no greater rights under the assignment than the assigneur had, and the defendant has the same defenses against the assignee as the defendant would have against the assigneur. Then like misuse of the copyright or some sort of bad conduct defense would have to be litigated without that party present? No, because that is a circumstance that would then require the joinder of the assigneur under the second provision of Section 501B. That – But what if the person isn't within the jurisdiction to be joined? Yes, he could be joined as an involuntary defendant. I think there are ways to join that person to the claim. I want to get back – Is that true then even – so even if we're going after the validity of the underlying copyright, that would be a defense that's open to the defendant in this subdivided case? Yes. Yes. And that's – and I believe that's the reason why patent law – one of the reasons why patent law has developed along a different line. It is a very common defense, I understand, in patent infringement case that the patent itself is invalid. How would they get discovery against the assigneur if the assigneur wasn't in the district? In other words, how would they be able to prove their defense? I think you'd have to get discovery the same way you would get discovery against somebody – any independent person. You have to go and get a commission or whatever the procedure is. Third-party – like third-party discovery. You could certainly use the same tools. But I would think that you'd be able to find a way under the second provisions of Section 501B to join that party as a defendant. How could you join them as a defendant if somebody else owns the cause of action and they didn't – they didn't do anything that's actionable? From what I know about Joinder, you can either – someone either voluntarily joins as a plaintiff or you can petition the court to have an involuntary Joinder either as a plaintiff or a defendant, whichever is more appropriate. And perhaps I misspoke. Because you'd like to get discovery. You mean join them as a plaintiff? I do mean join them. I misspoke. You would join them voluntarily or involuntarily as a plaintiff so that you could, A, assert those defenses, and, B, avoid the risk of multiple suits and make sure that anybody whose rights are affected by this lawsuit or the lawsuit we're talking about would be subject to the judgment. How do you reconcile your position with the statement by the Supreme Court in the Feist Publications case, which I believe is about 1990 or 91, which said that the two elements that the plaintiff must prove in an infringement case are ownership of the copyright and copying? I think those are general statements of the elements of a claim. Every substantive law has elements like that and standing elements. For example, under California law, only a party to a contract or an intended third-party beneficiary has the right to sue. And I assume to prevail on a breach of contract claim, you have to prove that you're a party to the contract or an intended third-party beneficiary. But that doesn't mean that somebody who has an accrued breach of contract cause of action can't then assign that claim to somebody else. That has to prove that the original person had those attributes, not that they haven't. That's correct. All right. I'm going to quit trying to ask questions if I don't get to get this one out. Okay. I just don't see how your argument squares with the language in 501B that says that talks about the person who has the right to institute an action for any infringement of that particular right committed while he or she is the owner of it. There's no way that Ms. Silvers can satisfy that or someone who's been assigned an accrued cause of action can satisfy that unless they were the owner at the times, which means they aren't the person to whom an accrued right was assigned, because they wouldn't need the assignment. I understand that. So how do you square that? If Section 501B is construed as being the only source of standing, only people specified in Section 501B can sue, then a copyright infringement cause of action can never be assigned, because by definition the person to whom it's assigned was not the party that owned the right. Right. But we already know through existing case law that an accrued cause of action for copyright infringement can be assigned. What case is that? That's part of the right, the exclusive right, so that you're an owner. That's the circumstance under which it arises. But to answer your question, but that's an extension. That was the Prather case, wasn't it? It wasn't. They assigned not just the right to sue in Prather. They assigned the right title and interest to the copyrighted work, including the right to sue. They attempted to do that. And that was before the divisibility of copyright. And the defense to that was that that assignment failed because the assignor retained rights. Okay. Now, you said one of your objectives was to persuade us that the 76 Act did not change the law on assignability. Where was it? What's your authority for the proposition, since we don't have the statute in front of us? Right. Prather wasn't a case involving a bare assignment. What case held that you could, before the 76 Act, do what happened in this case? Let me disagree with you by saying that the Prather case did hold exactly that. In the case, the Court says it doesn't matter whether or not this assignment of the copyright is valid or not. I found – remember, the Court talks about the button game. We don't have to play the button game of who owns the copyright. This is simply an assignment of a chosen action, and you don't need to be a proprietor of a copyright if you've been assigned the cause of action. That's the holding of the Prather case. It seems to me that you're right about Prather. But what do we know about how Prather went through the 76 amendments? Either as a matter – we have no direct legislative history that there was an intention to preserve it. Is that right? That's right. But what we do have is silence on the issue. Counsel, I'm wondering if Prather can survive the subsequent amendment of the statute. What I'm thinking is, suppose a person is the owner of a copyright and he assigns the copyright to another, transfers the copyright to another. So there's a new owner. It strikes me that the question this Wild Clause requires the Court to answer in the Wild Clause in 501B is when did the infringement occur? And once that question is answered, only the person who owned the copyright at the time of the infringement can sue, regardless of what assignments may be made and what the purchase and sale agreement may say between the old owner and the new owner. For Prather to survive, this committed while he is the owner clause has to die. Am I missing something? No, I respectfully disagree. Only if you construe 501B as defining the sole source of standing and the sole class of persons who can ever sue on a copyright infringement claim, therefore, it's never assignable. Are you saying that 501B says that owners can sue for infringements committed while they're the owner, but aside from 501B, non-owners can sue for infringements if they're the assignee, and owners can sue for infringements committed while they were not the owner if they get an assignment? Yes. My position is that my certainty of what Congress did in the Wild Clause. No, 501B simply defines the perd at the, it defines that at the point of infringement, you look at who owns the right that's been infringed, and that is the party in whom the cause of action accrues. But who, you would say, could transfer it? But who can subsequently transfer it, yes. Because is there some background rule here? I have this obsession about trying to figure out what the overall, the general rule is with respect to Federal statutory causes of action and the transferability of causes of, or the assignability of causes of action. Is there a background rule? Yes. No one's bothered to tell us anything about that. Yes. Your last 28 days. Right. And that is the general rule, is that causes of action are typically assignable. Non-assignability is the exception. And if I could pause for a moment and talk about the types of causes of action that are not assignable. Typically, the types of claims that are not assignable are claims that are too personal to the individual in whom they've accrued. For example, claims that seek damages for emotional distress. Claims that seek to compensate someone for loss of reputation, loss of consortium. Those are the kinds of claims that are too personal to an individual to permit them to be assigned to somebody else. Well, would you explain to me, leaving aside the words of the statute, why the copyright law should be different in this, as to this issue than the patent law, just in terms not of statutory language, but in terms of policy reasons? I believe because it is the policy of the Copyright Act to allow a copyright owner to divide his ownership interest in the copyright as much as he would like to, and as much as the statute permits, and to alienate those rights. Specifically stated in the Copyright Act is that any of the rights that go to make up a copyright can be transferred and owned separately. But it defines the rights that can be transferred. And it doesn't include, as one of my colleagues said earlier, it doesn't include a right to sue on one of those rights. Not expressly. Let me quote. I'm still not understanding why. Just explain to me why. If you were saying there is a good reason why the copyright law should be different in this respect than patent law, and that reason is? Copyrights are subdividable, whereas patents have to be. That just doesn't work, because they're subdividable in a defined fashion, and this isn't one of the defined fashions. So you can't get out of the division that's in the statute when the division in the statute doesn't include this. The House report. Please let me read from the House report about section 201D2. What it says is that subsection D2 means that any of the exclusive rights that go to make up a copyright, including those enumerated in section 106 and any subdivision of them, can be transferred and owned separately. By using the word including, both in the congressional report and in the statute, Congress is telling us that there are other rights other than the rights in section 106 that go to make up the totality of the rights that a copyright owner owns. And I would submit that the rights afforded under section 501B, the right to sue for infringement, is among the rights of a copyright owner. Well, let's go back to what D says. I just want to make sure, because D says that the ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law. And I'm sorry. I got into the wrong section. Section 2. Any of the exclusive rights comprised in a copyright, including any subdivision of any of the rights specified in section 106, may be transferred as provided by Clause 1. Now, you're reading that as saying that that expands the scope of exclusive rights by suggesting that that clause in opposition, including any subdivision, is not simply a modifier of the preceding clause? Correct. And I'm reading that because I was reading from the House report that explains that provision. This is the statute. This is the language of the statute. I understand, Judge Fischer, but this is the congressional report that accompanies the statute that is the closest thing we have to Congress explaining to us what the statute means. The closest thing we have to Congress explaining what it means is the statute. Let's go over, then. Can we then follow you over to 106, then? Because 106, then, in the first paragraph, says that these rights may be subdivided indefinitely and so on and so forth. Each subdivision of an exclusive right may be owned and enforced separately, which seems to suggest, Congress intended, that the exclusive right, the ownership and the right to enforce it, may be done separately, which seems to suggest that if there is going to be one of these infinite subdivisions, that you can assign the copyright interest and, along with it, you may assign the cause of action. But it does not seem to suggest that you can then further subdivide that copyright interest from the accrued cause of action. It seems to read the two together. I think that's too literal and too specific of a reading for the simple reason that the overall policy of the Copyright Act is to allow the copyright owner to subdivide his rights and transfer them separately. And if Congress wanted to say, and particularly in the face of the Prather case,  rights are not transferable, it would have, as it did in Section 106A, Subdivision E. Section 106A provides for certain rights to the author of a visual work, a painter in a painting, for example. She has the right to have her name associated with that painting, whether or not she's the copyright owner. She also has the right to have her name disassociated with that painting if the painting is used in a manner she disagrees with. Subdivision E specifically says that those rights are not transferable. And Congress knows exactly how to say that, if that's what it wants to say. And particularly in light of the policy of 201D2, that these rights can be separately owned and transferred, Congress knows that if it doesn't want certain rights to be transferred, it should and can easily say that. The difficulty I have with your argument is the same one I think that Judge Reimer and Judge Gould are having. That is, since Congress never listed the right to sue as a separate right, there would be no reason to say, and this right that we've never mentioned is not transferable. It seems to me that the unbundling that Congress is talking about is the unbundling of an exclusive right, which can be in small pieces, the right to take a script and make a play out of it or a screenplay or a stage play, doing various different things with it. And I just have difficulty seeing why they would say that you can't do what they've never said you can do in the first place. Or why we say you can't do what they haven't said you can't do in the first place, because the general rule is that causes of action, particularly causes of action that go to injury to property rights, are transferable. Same thing with RICO claims. Even the treble damages provisions. Normally these other – I mean, I don't know the language of every single statute. Far from it. But sometimes the statutes say something like anyone injured by reason of violation of the statute can sue or any person can sue. And I'm not familiar with this language like the Wild Clause in 501 being in other federal statutes. Am I wrong in that? I think every federal statutory scheme is going to define in some manner the persons who have standing and the persons who are entitled to sue. In the Amerifors Bank case, the definition of who could sue for claims for fraud under 10b was defined by the Supreme Court. Only people who were actually defrauded who relied detrimentally on a misrepresentation. But that doesn't mean that that claim can't be assigned once it accrues to the owner. And you cannot use – the Amerifors Bank case tells us very specifically that the issue of standing and the issue of who is entitled to sue and in whom the cause of action accrues is a separate issue from whether or not that cause of action, once it does accrue, can be assigned and transferred to somebody else. The problem here is that nobody in this case has briefed anything but copyright – but intellectual property law until this letter showed up. And the other side hasn't had a chance to respond to it. It's a fairly partial analysis. It's a strange way to proceed, and I don't know what will happen. I do apologize for the lateness of that letter. I did discuss that case at the oral argument before the panel two years ago. So that case is not surprising. A lot of the answers to what we're looking for is also in the case law in terms of defining what rights you need to own in order to be able to file a lawsuit for copyright infringement. And I've created this little chart that I would like the opportunity to discuss. We've discussed this doctrine that says, in my case, Party A owns the copyright. There's been an infringement. The copyright infringement cause of action accrues to Party A. And then these cases discuss how do we consider, once Party A transfers rights, whether or not who can sue on those accrued causes of action. And I want to state that there's nothing in any of these cases that discuss this circumstances under which you can transfer copyrights. But let's look at this in its practical effect, because these are, at bottom, business transactions that occur every day. And if you look at my scenario two, this is one option available to the parties under this doctrine. Again, there's nothing exclusive about it, but it teaches us a lot. Under scenario two, Party A transfers just the copyright to Party B, and Party A retains ownership of the cause of action. We see that the copyright and the cause of action can be owned separately. And specifically, under the Abko Music v. Harrison's case, it says that that Party A can sue on that cause of action even after completely divesting himself of all ownership, interest, and the copyright. And by that principle, we've just answered the first question framed by the Court. The first question is, under 17 U.S.C. section 501B, is only the present owner of an exclusive Because the statute says they can bring it if it was committed while he or she was the owner of it. That's explicitly. I agree, but this issue is only the present owner of an exclusive right under a copyright entitled to sue for infringement. Scenario two tells us you can file a lawsuit for copyright infringement when the only thing you own The one that supports you is the, again, there are also cases that say you can transfer the copyright and accrue causes of action. Yes. Which isn't consistent with the statutory language. Which doesn't, like, comply with the statutory language if you took that as literal. No, it doesn't. And then these two, in combination, give us, under scenario four, give us the answer to the second issue framed by the Court. If party A transfers to party B the copyright and the cause of action, then party B steps completely into the shoes of party A and has the right to sue on that claim. But then party B can transfer the copyright to party C and retain ownership of the cause of action. Our party B What you're really saying about what you're calling scenario four is that many of the questions that were being asked about defenses, for example, come up in that circumstance. First, if the copyright and the cause of an accrued cause of action are transferred, then the S&E sues, the same problems arise with respect to what defenses the defense could raise. That's certainly one point of this, yes. But the other point that I'm trying to make is that our party B in scenario four can file a lawsuit even though the only thing party B owns at the time the lawsuit is filed is a cause of action that's been assigned to him.   Sorry for taking his time. No problem. You may go now. Mr. B [(inaudible)] Your time has expired. Thank you. Thank you, Your Honor. In the two minutes I have, I would like to take up the question, is intellectual property different, which has been asked in several different forms during the course of the presentations today. And I believe the answer is that intellectual property is different from other federal causes of action, and that the Supreme Court and Congress have both shown that by, respectively, their holdings and enactments. As to the Supreme Court, as I mentioned in the Crown Dye and Tool case, it held, in the very context we're dealing with here, a case where there was an assignment of an accrued cause of action separate from an assignment of an interest in the patent, and the court held that was not proper. And the reasoning was the court's view that the nature of the patent right is such that the cause of action for its infringement inheres in the property right to exclude, and therefore they cannot be separated. And that reasoning has been followed, for example, in the trademark area, where, to take one example in the International Krishna Consciousness case, which is cited in the briefs, a district court followed precisely that same reasoning with respect to trademarks to hold that a bare claim for trademark infringement may not be assigned separately from ownership of the trademark. Lastly, as to Congress and the Copyright Act, when it was enacted in 1909, Congress provided for indivisibility to protect defendants from multiple litigations, and the indivisibility principle is another way of saying the same thing. These divisions were not possible. That's how the courts interpreted the congressional enactment of 09. Yes, it has been somewhat liberalized, but it has never been liberalized to the extent of allowing a bare assignment. The 76 Act does not permit that. Thank you. Thank you, counsel. The case just argued is submitted for decision, and that concludes the court's calendar this afternoon. The court stands adjourned.
judges: Schroeder, Reinhardt, Rymer, Kleinfeld, Graber, Wardlaw, Fisher, Gould, Paez, Berzon, Bea